IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America ) | Criminal Action No. 3:19-cr-302-JMC |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Kenyada Jaqu ) | |
| ) | |
| _____ ) | |

Currently before the court is Defendant Kenyada Jaqu's ("Defendant") Motion to Suppress Evidence from Traffic Stop (ECF No. 113) pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. The Government has filed responsive briefing in opposition to the Motion. (ECF No. 178.) For the following reasons, the court **DENIES** Defendant's Motion to Suppress. (ECF No. 113.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2019, an individual unrelated to the instant case allegedly began a methamphetamine sale to undercover officers. (ECF No. 211 at 29:18-30:3.) The alleged drug dealer took the undercover officer's money and informed the officer he had to "re-up" and meet his source at a house "off of Harbison Boulevard." (*Id.*) The dealer then traveled to and entered a house on Harbison Boulevard. (*Id.* at 30:4-10.) Officers followed the dealer and began surveilling the house. (*Id.*) While the officers watched, a white Nissan Maxima with two occupants pulled into the driveway. (*Id.*) The occupants were later identified as Defendant and his girlfriend, Ronda Barker. (*Id.* at 31:16-17.) Defendant entered the house and, within a "couple minutes," exited the residence, reentered the Nissan, and pulled away. (*Id.* at 30:6-11.) With their interest piqued, officers began following the Nissan. (*Id.* at 30:11-12.)

The Nissan went to a residence on Pickwick Drive. (*Id.*) Officers researched the address

1

and discovered that "Kenyada Jaqu" resided there. (*Id.* at 30:20-24.) Although at this point officers had not yet identified the male occupant of the Nissan as Defendant, they "knew [Defendant] as a heroin dealer from [their] previous experience in 2015." (*Id.*) Officers surveilling the Nissan noted that the occupant was the same race, "had the same stature, [and had the] same build as Kenyada." (*Id.*) Officers also learned the Nissan was a rental vehicle. (*Id.* at 30:14-16.)

A few minutes later, the Nissan left the house on Pickwick Drive. (*Id.* at 30:25-31:1.) Officers continued their covert reconnaissance and observed the Nissan incur "several traffic violations including speeding[] and a failure to use a turn signal[.]" (*Id.* at 31:1-4.) Investigator Brad Maxwell testified he personally "observed the . . . traffic violations." (*Id.* at 55:2-3.) Investigator Maxwell then radioed Deputy Donny Campbell stop the Nissan due to the traffic violations, and specifically informed Deputy Campbell that the Nissan had been speeding. (*Id.* at 31:9-13, 65:18-66:15.)

Shortly thereafter, Deputy Campbell initiated the stop. (*Id.* at 31:16-21.) He approached the vehicle; asked for identification, insurance, and registration from both occupants; and identified Barker as the driver and Defendant as the passenger. (*Id.* at 31:16-21, 69:14-20.) Before running the occupant's information through the police's database, Deputy Campbell asked Barker if he could search the Nissan, and she gave him consent to do so. (*Id.* at 31:22-32:4, 69:21-24.) Thereafter Barker and Defendant complied with Deputy Campbell's request for them to exit the vehicle. (*Id.* at 71:1-7.) Ultimately, the search yielded two bags of a tannish substance and a third bag containing a crystalline substance, which were suspected to be heroin and methamphetamine. (ECF Nos. 113 at 2; 178 at 1; 211 at 32:6-12.)

Defendant was later charged in the Superseding Indictment with (1) Possession with Intent to Distribute 100 grams or more of Heroin, a Schedule I controlled substance, and a Quantity of

Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C); (2) Possession of Firearms in furtherance of Drug Trafficking Offenses, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); (3) Felon in Possession of Firearms, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) Conspiracy to Possess with Intent to Distribute and Distribute 1 kilogram or more of Heroin and a quantity of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C). (ECF No. 52 at 1-3.)

On December 15, 2019, Defendant filed seven Motions to Suppress, including the instant Motion. (ECF Nos. 112-115, 117-119.) The court held a hearing on several of these matters over a two day period on June 26, 2020, and July 16, 2020. (ECF Nos. 197, 202.) At the hearing, Investigator Maxwell, Deputy Campbell, and Ronda Barker offered testimony. (ECF No. 211 at 2.)

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'" under the Fourth Amendment. *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (citing *Whren v. United States*, 517 U.S. 806, 809 (1996)). An automobile stop, therefore, is subject to the reasonableness requirement of the Fourth Amendment. *Id.* In determining whether a traffic stop is reasonable, the court asks (1) if the stop was "legitimate at its inception," and (2) if "the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." *Id.* (citing *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017); *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015)).

An officer's "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. 806, 810 (1996). A lawful traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete [the] mission" of issuing a warning ticket. *Bowman*, 884 F.3d at 209-10 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The permissible duration of a traffic stop "is determined by the seizure's mission, meaning that it may "last no longer than is necessary to effectuate that purpose." *Id.* at 210. However, the detention of a motorist may be extended beyond the time necessary to accomplish a traffic stop's purpose, if the authorities either possess "reasonable suspicion or *receive the driver's consent*." *Williams*, 808 F.3d at 245 (emphasis added). The court looks at the totality of the circumstances to determine whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *Id.* at 246.

"Suppression of evidence . . . has always been [the court's] last resort, not [the court's] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Because the consequences of applying the rule are so dire, a defendant urging its application carries a heavy burden. *See id.* (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364-65 (1998)). Suppression should be limited to cases in which its deterrent effect against law enforcement's misconduct outweighs the costs inherent in barring evidence that law enforcement expended great resources to obtain. *See Scott*, 524 U.S. at 357 (citing *United States v. Leon*, 468 U.S. 897, 907 (1984)).

### III. DISCUSSION

Defendant makes the following argument:

> [t]he stop of the vehicle began with surveillance of Barker and Jaqu at a residence in Richland County. Once the parties entered the vehicle, a marked Richland County Sheriff's Department stopped the vehicle for speeding and failure to signal. The deputy failed to issue a citation for either infraction after checking the parties' driver's licenses and vehicle registration. Defendant Jaqu, a passenger in the car, was "seized" the moment the car was stopped and was not free to leave. Moreover,

the stop lasted 57 minutes. The stop as conducted violated Jaqu's Fourth and Fourteenth Amendment rights.

(ECF No. 113 at 3.)

In response, the Government points out that Barker consented to the search of the vehicle, thereby authorizing the length of the stop. (ECF No. 178 at 3-4.) Additionally, the Government observes that officers "had reasonable suspicion of criminal activity when they stopped the car" based on prior surveillance. (*Id.*)

Here, the court finds the traffic stop was reasonable. First, the traffic stop was "legitimate at its inception," as Defendant admits the vehicle in which he was riding exceeded the speed limit and turned without the use of a turn signal. (ECF Nos. 113 at 1; 211 at 31:1-4.) Such violations established probable cause and authorized officers to conduct the traffic stop, regardless of the fact that police observed the infractions while surveilling Defendant for unrelated potential drug activity.[1] *See also United States v. Johns*, 667 F. App'x 830, 831 (4th Cir. 2016) ("[R]egardless of the officer's subjective intent, the stop was lawful because the police objectively had probable cause to stop the car after observing [the defendant's] erratic driving."). The traffic stop was thus legitimately initiated.

Second, the officer's actions during the traffic stop were reasonably related to the stop's purpose. Deputy Campbell initiated the traffic stop; approached the vehicle; requested identification, insurance, and registration from both occupants; and, before running their

---

[1] Similarly, although Deputy Campbell did not personally observe the Nissan's traffic violations, he was authorized to stop the vehicle after Investigator Maxwell informed him of the infractions. *See United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011) ("The collective-knowledge doctrine, as enunciated by the Supreme Court, holds that when an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action herself; in this very limited sense, the instructing officer's knowledge is imputed to the acting officer.").

information, asked Barker if he could search the Nissan.[2] (ECF No. 211 at 31:16-32:4, 69:14-24.) Barker then gave him consent to search. (*Id.* at 31:22-32:4.) The traffic stop was not unreasonably prolonged *before* the officer obtained consent because only a short period of time seemed to pass between the stop's initiation and the request to search. Additionally, the stop's original purpose was still ongoing, as Deputy Campbell had not yet even run the information of Barker and Defendant. Defendant does not argue that police used coercive tactics or otherwise improperly gained consent to search the Nissan. Once the officer obtained consent, the stop's duration was justified "beyond the time necessary to accomplish [the] traffic stop's purpose." *Williams*, 808 F.3d at 245. Thus, even though the stop purportedly lasted fifty-seven minutes, Barker's consent to search the vehicle justified such an extension of time. *Id.*

Alternatively, the court notes the extended duration of the traffic stop was also justified due to reasonable suspicion that Defendant was engaged in criminal activity related to narcotics. *See Williams*, 808 F.3d at 245. Defendant appeared at the residence on Harbison Boulevard shortly after another individual—who was in the process of a controlled narcotics deal with an undercover officers—traveled to "re-up" and meet his source at a house "off of Harbison Boulevard." (ECF No 211 at 29:18-30:3.) This information, and other information gathered during the subsequent surveillance and investigation, amounted to at least reasonable suspicion of criminal activity for police to justifiably prolong the traffic stop.

---

[2] Deputy Campbell was authorized to ask for permission to search even if he had no warrant, probable cause, or reasonable suspicion. *See United States v. Suarez*, 321 F. App'x 302, 305-06 (4th Cir. 2009) ("One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.") (internal marks omitted) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

## IV. CONCLUSION

For the reasons above, the court **DENIES** Defendant's Motion to Suppress. (ECF No. 113.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 2, 2020
Columbia, South Carolina