**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| United States of America | ) | Criminal Action No. 3:19-cr-302-JMC |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Kenyada Jaqu | ) | |
| | ) | |
| _____ | ) | |

Currently before the court is Defendant Kenyada Jaqu's ("Defendant") Motion to Suppress Evidence from Pickwick Drive (ECF No. 114) pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. The Government has filed responsive briefing in opposition to the Motion. (ECF No. 183.) For the following reasons, the court **DENIES** Defendant's Motion to Suppress. (ECF No. 114.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2019, an individual unrelated to the instant case allegedly began a methamphetamine sale to undercover officers. (ECF No. 211 at 29:18-30:3.) The alleged drug dealer took the undercover officer's money and informed the officer he had to "re-up" and meet his source at a house "off of Harbison Boulevard." (*Id.*) The dealer then traveled to and entered a house on Harbison Boulevard. (*Id.* at 30:4-10.) Officers followed the dealer and began surveilling the house. (*Id.*) While the officers watched, a white Nissan Maxima with two occupants pulled into the driveway. (*Id.*) The occupants were later identified as Defendant and his girlfriend, Ronda Barker. (*Id.* at 31:16-17.) Defendant entered the house and, within a "couple minutes," exited the residence, reentered the Nissan, and pulled away. (*Id.* at 30:6-11.) With their interest piqued, officers began following the Nissan. (*Id.* at 30:11-12.)

The Nissan drove to a residence on Pickwick Drive. (*Id.*) Officers researched the address

and discovered that "Kenyada Jaqu" resided there. (*Id.* at 30:20-24.) Although at this point officers had not yet identified the male occupant of the Nissan as Defendant, they "knew [Defendant] as a heroin dealer from [their] previous experience in 2015." (*Id.*) Officers surveilling the Nissan noted that the occupant was the same race, "had the same stature, [and had the] same build as Kenyada." (*Id.*) Officers also learned the Nissan was a rental vehicle. (*Id.* at 30:14-16.)

A few minutes later, the Nissan left the house on Pickwick Drive. (*Id.* at 30:25-31:1.) Officers continued their covert reconnaissance and observed the Nissan incur "several traffic violations including speeding[] and a failure to use a turn signal[.]" (*Id.* at 31:1-4.) Investigator Brad Maxwell testified he personally "observed the . . . traffic violations." (*Id.* at 55:2-3.) Investigator Maxwell then radioed Deputy Donny Campbell stop the Nissan due to the traffic violations, and specifically informed Deputy Campbell that the Nissan had been speeding. (*Id.* at 31:9-13, 65:18-66:15.)

Shortly thereafter, Deputy Campbell initiated the stop. (*Id.* at 31:16-21.) He approached the vehicle; asked for identification, insurance, and registration from both occupants; and identified Barker as the driver and Defendant as the passenger. (*Id.* at 31:16-21, 69:14-20.) Before running the occupant's information through the police's database, Deputy Campbell asked Barker if he could search the Nissan, and she gave him consent to do so. (*Id.* at 31:22-32:4, 69:21-24.) Thereafter Barker and Defendant complied with Deputy Campbell's request for them to exit the vehicle. (*Id.* at 71:1-7.) Ultimately, the search yielded two bags of a tannish substance and a third bag containing a crystalline substance, which were suspected to be heroin and methamphetamine. (ECF Nos. 113 at 2; 178 at 1; 211 at 32:6-12.)

Meanwhile, police continued surveilling the Pickwick Drive residence both during and after the traffic stop. (ECF No. 211 at 34:10-14.) Shortly after the traffic stop began, Defendant's

mother, Annie Jones, arrived at the Pickwick Drive residence, briefly went inside, came outside and departed in her vehicle, and immediately drove to a carwash. (*Id.* at 34:17-35:11.) Jones met Defendant's sister, Tabitha McNeal, in the parking lot of the carwash. (*Id.* at 35:13-19.) Jones took an item from her vehicle and handed it to McNeal. (*Id.*) From there, McNeal traveled to a residence on Cornflower Drive.[1] (*Id.* at 35:20-36:2.) Sometime later, McNeal exited the Cornflower Drive residence with a duffel bag, placed it into a sedan, entered the driver's seat of the sedan, and drove to the community pool. (*Id.* at 36:2-14.) Officers then approached her and another male while they were parked near the pool. (*Id.* at 36:8-16.) McNeal admitted "she had met with her mother and gotten a duffel bag at the carwash." (*Id.* at 36:15-24.) Officers also learned the vehicle driven by McNeal belonged to Barker. (*Id.*) McNeal declined to consent to a search of the vehicle, which included the duffel bag. (*Id.*)

Based on the above facts, officers obtained a search warrant for the Pickwick Drive residence and recovered "from the top left bedroom . . . 1) body armor; 2) clear plastic bags with a crystal-like residue; 3) a digital scale; and 4) a plastic bag containing several green Ziploc bags." (ECF No. 183 at 2-3.)

Defendant was later charged in the Superseding Indictment with (1) Possession with Intent to Distribute 100 grams or more of Heroin, a Schedule I controlled substance, and a Quantity of Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C); (2) Possession of Firearms in furtherance of Drug Trafficking Offenses, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); (3) Felon in Possession of Firearms, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) Conspiracy to Possess with Intent to Distribute

---

[1] The vehicle driven by McNeal was registered to the address at Cornflower Drive. (ECF No. 211 at 35:20-23.)

and Distribute 1 kilogram or more of Heroin and a quantity of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C). (ECF No. 52 at 1-3.)

On December 15, 2019, Defendant filed seven Motions to Suppress, including the instant Motion. (ECF Nos. 112-115, 117-119.) The court held a hearing on several of these matters over a two day period on June 26, 2020, and July 16, 2020. (ECF Nos. 197, 202.) At the hearing, Investigator Maxwell, Deputy Campbell, and Ronda Barker offered testimony. (ECF No. 211 at 2.)

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. All warrants must "(1) be issued by a neutral and detached magistrate, (2) contain a particular description of the place to be searched, and the person or things to be seized, and (3) be based upon probable cause, supported by Oath or affirmation." *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994). A magistrate judge must examine the totality of the circumstances to determine whether probable cause exists, and whether a warrant should be issued. *Id*. Accordingly, "[t]he task of the issuing magistrate [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). The magistrate judge must consider primarily "whether it is reasonable to believe that the items seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). Finally, when reviewing the issuance of a warrant, the reviewing court gives strong deference to the issuing magistrate judge's determinations. *See Clyburn*, 24 F.3d at 617.

4

"Suppression of evidence . . . has always been [the court's] last resort, not [the court's] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Because the consequences of applying the rule are so dire, a defendant urging its application carries a heavy burden. *See id*. (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364-65 (1998)). Suppression should be limited to cases in which its deterrent effect against law enforcement's misconduct outweighs the costs inherent in barring evidence that law enforcement expended great resources to obtain. *See Scott*, 524 U.S. at 357 (citing *United States v. Leon*, 468 U.S. 897, 907 (1984)).

## III. DISCUSSION

Defendant contends that police, "without probable cause, sought and executed a search warrant for [Defendant's] home at Pickwick Drive." (ECF No. 114 at 2.) Defendant further observes that, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place searched." (*Id.*) The Government counters that the "warrant on the Pickwick residence was supported by probable cause." (ECF No. 183 at 4.)

Here, probable cause supported the search of the Pickwick Drive residence because it was reasonable to believe narcotics and other related evidence were in the home. Defendant appeared at the residence on Harbison Boulevard shortly after another individual—who was in the process of a controlled narcotics deal with an undercover officer—traveled to "re-up" and meet his source at a house "off of Harbison Boulevard." (ECF No 211 at 29:18-30:3.) Defendant then went to his residence at Pickwick Drive, entered the house, and later departed in the Nissan. (*Id.* at 30:25-31:1.) A few minutes thereafter Defendant was stopped and discovered with narcotics. (*Id.* at 32:6-12.) It was reasonable to conclude evidence of narcotics would be at the Pickwick Drive address

because Defendant's activities, both immediately before and after he visited his home, apparently involved drugs. *United States v. Grossman*, 400 F.3d 212, 217-18 (4th Cir. 2005) (explaining when a drug dealer creates a "sufficient nexus" between his criminal conduct and his residence, "it is reasonable to suspect that [he] stores drugs in a home to which he owns a key"); *United States v. Villapando*, No. CR ELH-16-159, 2017 WL 1277491, at *13 (D. Md. Apr. 5, 2017) (similar). Moreover, simultaneous to the traffic stop, officers surveilled Defendant's mother arrive at, enter, and depart from the Pickwick Drive residence and then meet Defendant's sister at a carwash parking lot to hand over a duffel bag. (ECF No. 211 at 34:17-36:24.) Although the contents of the duffel bag were ostensibly never discovered, the timing and manner of such acts at least heightened suspicions that criminal activity was afoot on Pickwick Drive.

Taken together, these circumstances supported the issuance of a warrant and authorized officers to search the home at Pickwick Drive. *Cf. United States v. Williams,* 974 F.2d 480, 481-82 (4th Cir. 1992) (authorizing a search of the defendant's motel room when, during a traffic stop, officers discovered drug residue, a knife, and a motel receipt; and the defendant was a known drug dealer); *United States v. Williams*, 548 F.3d 311, 319-20 (4th Cir. 2008) ("[W]e have upheld warrants to search suspects' residences and even temporary abodes on the basis of (1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their homes."); *Grossman*, 400 F.3d at 217-18 ("Indeed, our cases indicate that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's residence.") (internal marks omitted) (quoting *United States v. Servance*, 394 F.3d 222, 230 (4th Cir. 2005), *vacated on other grounds*,

544 U.S. 1047 (2005)); *United States v. Suarez*, 906 F.2d 977, 984-85 (4th Cir. 1990). As the search warrant was proper, the court must consequently deny the instant Motion to Suppress.

## IV. CONCLUSION

For the reasons above, the court **DENIES** Defendant's Motion to Suppress. (ECF No. 114.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

October 5, 2020
Columbia, South Carolina