# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| United States of America ) | Criminal Action No. 3:19-cr-302-JMC |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Kenyada Jaqu ) | |
| ) | |
| _____) | |

Currently before the court is Defendant Kenyada Jaqu's ("Defendant") Motion to Suppress Evidence from a Hotel Room Search (ECF No. 112) pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. The Government has filed responsive briefing in opposition to the Motion. (ECF No. 177.) For the following reasons, the court **GRANTS** in part and **DENIES** in part Defendant's Motion to Suppress. (ECF No. 112.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2019, Defendant and his girlfriend, Ronda Barker, were under police surveillance due to alleged drug activity. (ECF No. 211 at 30:11-12.) Officers observed the white Nissan Maxima occupied by Defendant and Barker incur "several traffic violations including speeding[] and a failure to use a turn signal[.]" (*Id.* at 31:1-4.) Shortly thereafter, an officer initiated a traffic stop and obtained Barker's consent to search the vehicle. (*Id.* at 31:16-32:4, 69:21-24.) The search yielded suspected heroin and methamphetamine and a hotel room key. (ECF No. 211 at 32:6-12, 33:12-16.) Defendant and Barker were then arrested. (ECF No. 1-1 at 3.)

After her arrest, Barker made several post-*Mirandized* statements to officers. (*Id.*) She told officers that she and Defendant were staying at a nearby hotel in room 118, which she had rented. (ECF No. 211 at 83:16-84:24.) She indicated Defendant's things were "located to the left of the bed." (ECF No. 1-1 at 3.) Barker further explained that Defendant recently brought a safe into the

1

room. (ECF Nos. 1-1 at 3; 211 at 89:4-10.) Barker maintained the safe did not belong to her and instead belonged to Defendant. (ECF No. 211 at 58:8-10.) She then provided written consent for officers to search room 118. (*Id.* at 84:22-85:6.)

Officers later arrived at the hotel. (ECF No. 1-1 at 3.) Officers first spoke with management and confirmed Barker rented room 118. (*Id.*) Management further identified Barker and Defendant as frequent renters. (*Id.* at 3-4.) Officers then entered room 118 and discovered "multiple suitcases and personal belongings . . . inside the room," a safe located to the left of the bed, and a lanyard with the name "Ken" inscribed on it that held several keys. (ECF Nos. 1-1 at 4; 211 at 87:14-88:8.) One key on the lanyard fit into the safe and another key fit into a locked pink suitcase. (*Id.*) The locked pink suitcase at issue included an attached luggage tag bearing Barker's name. (ECF No. 211 at 85:7-87:13.) Officers used the keys to unlock and search both the pink suitcase and safe. (ECF No. 1-1 at 4.) Officers discovered two handguns in the pink suitcase, and a "tannish powder, a baggie of crystal substance, [and] multiple pills" in the safe. (*Id.*)

Defendant was charged in the Superseding Indictment with (1) Possession with Intent to Distribute 100 grams or more of Heroin, a Schedule I controlled substance, and a Quantity of Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C); (2) Possession of Firearms in furtherance of Drug Trafficking Offenses, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); (3) Felon in Possession of Firearms, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) Conspiracy to Possess with Intent to Distribute and Distribute 1 kilogram or more of Heroin and a quantity of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C). (ECF No. 52 at 1-3.)

On December 15, 2019, Defendant filed seven Motions to Suppress, including the instant Motion. (ECF Nos. 112-115, 117-119.) The court held a hearing on several of these matters over

a two day period on June 26, 2020, and July 16, 2020. (ECF Nos. 197, 202.) At the hearing, Investigator Brad Maxwell, Deputy Donny Campbell, and Ronda Barker offered testimony. (ECF No. 211 at 2.)

Barker testified during the hearing that the pink suitcase was "her[s]," but the firearms therein were not. (ECF Nos. 211 at 85:7-87:13, 88:18-89:3; 212 at 7:11-19.) Barker further stated she bought the suitcase, had recently traveled with it, and used it to store her personal items. (*Id.*) Barker emphasized that of the six pieces of luggage in the room, the three black suitcases belonged to Defendant and the three pink ones belonged to her. (ECF No. 212 at 23:5-24:22.) Barker further explained all of the locks on the various pieces of luggage in the room used the same key, and that both she and Defendant retained a key for the locks. (*Id.* at 25:6-26:8.)

Regarding the safe, Barker reiterated that Defendant brought the safe into the room. (ECF No. 211 at 89:4-10.) She stated she only moved it to "clean under it or clean around it." (*Id.*) Moreover, she explained that she "opened it one time and there was nothing in it." (ECF No. 212 at 28:6-19.) Barker noted the safe was unlocked on the one occasion she opened it. (*Id.*) Barker further testified she placed the safe's key onto the lanyard "so it wouldn't get lost . . . . It was just [lying] there, so I stuck it on his key ring with the rest of his keys. (*Id.* at 28:23-29:4.)

## II. LEGAL STANDARD

"Suppression of evidence . . . has always been [the court's] last resort, not [its] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Because the consequences of applying the rule are so dire, a defendant urging its application carries a heavy burden. *See id*. (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364-65 (1998)). Suppression should be limited to cases in which its deterrent effect against law enforcement's misconduct

outweighs the costs inherent in barring evidence that law enforcement expended great resources to obtain. *See Scott*, 524 U.S. at 357 (citing *United States v. Leon*, 468 U.S. 897, 907 (1984)).

### III. DISCUSSION

Defendant contends officers failed to "inquire of [Defendant] whether they could search the hotel room that they reasonably believed belonged to him." (ECF No. 112 at 2.) Defendant also appears to argue that, during the search, officers were not authorized to open a locked suitcase and safe within the hotel room. (*Id.*) The Government counters that Barker was authorized to consent to the room's search because she rented and occupied the room. (ECF No. 177 at 3.) The Government further posits that such consent extended to locked containers within the room. (ECF No. 212 at 34.) The court begins by examining whether officers properly searched the hotel room based on Barker's valid consent, and then turns to whether such consent extended to a locked pink suitcase and safe within the room.

#### A. Hotel Room

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. "[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974) (citations omitted). "'Common authority' in this context is not merely a question of property interest. Rather, it requires evidence of 'mutual use' by one generally having 'joint access or control for most purposes.'" *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007) (quoting *Matlock*, 415 U.S. at 171, n.7). "Such use makes it 'reasonable to recognize that any of

the co-[users] [had] the right to permit the inspection in h[er] own right and that the others have assumed the risk that one of their [members] might permit the common [effects] to be searched.'" *Id.* "[E]vidence obtained by the police acting under a reasonable belief . . . [of] valid consent to the search need not be suppressed." *United States v. Kinney*, 953 F.2d 863, 866 (4th Cir. 1992) (citing *Illinois v. Rodriguez,* 497 U.S. 177 (1990)).

Alternatively, if an individual lacks the actual authority to consent, he or she may nonetheless possess the apparent authority necessary to authorize a search. *United States v. Yengel*, No. 4:12CR11, 2012 WL 12906331, at *6 (E.D. Va. Apr. 4, 2012), *aff'd*, 711 F.3d 392 (4th Cir. 2013). The determination of apparent authority is "judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premise[?]" *Rodriguez,* 497 U.S. at 188. The court must view the totality of the circumstances when examining whether apparent authority exists. *Yengel*, 2012 WL 12906331, at *6.

Here, Barker had actual authority to consent to the search of room 118. Prior to the search, Barker stated—and hotel management confirmed—she was renting room 118. (ECF Nos. 1-1 at 3-4; 211 at 83:16-84:24.) As the Government correctly points out, "[t]he law is clear that consent to warrantless search by one co-occupant is valid even if a co-occupant who was not present at the time consent was sought would not have consented." (ECF No. 177 at 4 (citing *Fernandez v. California*, 571 U.S. 292, 298 (2014) ("The owner of a home has a right to allow others to enter and examine the premises, and there is no reason why the owner should not be permitted to extend this same privilege to police officers if that is the owner's choice.")). Therefore, the court finds that officers properly conducted a warrantless search based on Barker's consent, and Defendant's permission was not needed to search room 118.

### B. Suitcase

Next, the court examines whether Barker's consent to search room 118 extended to a locked pink suitcase. If an individual has actual or apparent authority to consent to a search, that authority does not automatically "extend to the interiors of every discrete enclosed space capable of search within the area." *United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978). "[T]he Fourth Circuit has made it clear that the third-party consenter must have 'common authority' over the <u>specific area or object</u> to be searched, not just over the room in which the area or object is located." *Yengel*, 2012 WL 12906331, at *4 (citations omitted) (emphasis in original). Moreover,

> [c]ommon experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's "enclosed spaces[,]" mankind's valises, suitcases, footlockers, strong boxes, etc. are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in public places or in places under the general control of another.

*Block,* 590 F.2d at 541.

Here, the court finds Barker had actual authority to permit the search of the locked pink suitcase at issue. Barker testified that the pink suitcase bearing the firearms was "her[s]." (*Id.* at 85:7-87:13.) Barker further stated she bought the suitcase, had recently traveled with it, and used it to store her personal items. (*Id.*) And the pink suitcase at issue contained an attached tag bearing Barker's name. (ECF Nos. 1-1 at 3; 211 at 84:22-87:13.) While Defendant also used the suitcase to store items, such mutual use still allowed Barker to consent to its search. (ECF Nos. 211 at 88:18-89:3; 212 at 7:11-19.) Barker thus had actual authority to allow the search of the locked pink suitcase, which was permitted based on her consent to search room 118. Accordingly, the court denies Defendant's request to suppress evidence recovered from the pink suitcase.

### C. Safe

Lastly, the court finds Barker's consent did not permit a search of the safe because she lacked actual authority to do so. Barker explicitly stated—and indeed, the Government admits—the safe belonged to Defendant and not her. (ECF Nos. 211 at 58:8-10; 212 at 34:7-9.) She further explained she only moved the safe to "clean under it or clean around it," without suggestion that she had mutual use or control of the contents inside. (*Id.*) Moreover, she clarified the safe was empty and unlocked on the lone occasion she opened it, which occurred before Defendant used the safe in a manner that heightened his expectation of privacy. (ECF No. 212 at 28:6-19.) Barker's access to the safe's key also did not grant actual authority, as she simply placed the key onto the lanyard "so it wouldn't get lost . . . . It was just [lying] there, so I stuck it on his key ring with the rest of his keys. (*Id.* at 28:23-29:4.) Barker thus lacked actual authority to consent to the safe's search.

Likewise, Barker did not have apparent authority over the safe at the time of the search. As noted above, Barker told officers *before the search* that it belonged to Defendant and not her. (ECF No. 211 at 58:8-10.) She mentioned Defendant recently brought the safe into the room. (ECF Nos. 1-1 at 3; 211 at 89:4-10.) She did not provide officers with a key to the safe or otherwise suggest she had control over or mutual use of its contents. During the search, officers recovered the safe's key from a lanyard inscribed with "Ken," which is presumably short for Defendant's name.[1] (ECF Nos. 1-1 at 4; 211 at 87:14-88:8.) Officers also found the safe located to the left of the hotel room's bed—the area in which Barker stated Defendant's things would be placed. (*Id.*) Such circumstances show an officer would not reasonably believe that Barker's consent extended to

---

[1] Investigator Brad Maxwell testified that he "would assume" the inscription of "Ken" on the lanyard meant the keys belonged to Defendant. (ECF No. 211 at 58:16-59:2.)

Defendant's locked safe. Accordingly, Barker lacked apparent authority to consent to the safe's search.[2]

In short, officers were authorized to search room 118 and the locked pink suitcase at issue based on Barker's consent. However, during the search officers improperly accessed Defendant's locked safe. The contents of the safe must therefore be suppressed.

## IV. CONCLUSION

For the reasons above, Defendant's Motion to Suppress is **GRANTED** in part for the evidence recovered from within the safe, and **DENIED** in part regarding Defendant's remaining arguments. (ECF No. 112.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 7, 2020
Columbia, South Carolina

---

[2] During the hearing, the Government attempted to compare at least two cases to the instant facts to show the search was proper. Yet the first case, *Poole,* is distinguishable because it concluded that a father's consent to search his son's vehicle's locked trunk was valid because the car's "deserted appearance . . . defeat[ed] any reasonable expectation of privacy . . . in the trunk." *United States v. Poole*, 829 F.2d 37, at *2 (4th Cir. 1987). And the second case, *Buckner*, contained a host of facts to show a wife had apparent authority to consent to the search of password protected files on a shared computer. *Buckner*, 473 F.3d at 555. Neither of these cases are applicable to the instant case.